**UNITED STATES of America,**
**Libelant,**

v.

**Samuel M. VEREEN, Respondent.**

**No. 1203.**

United States District Court
E. D. South Carolina,
Charleston Division.

Jan. 7, 1965.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., Bardyl R. Tirana, Atty., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., Bertram Snyder, Dept. of Justice, Washington, D. C., for libelant.

B. A. Moore, Jr., Moore, Mouzon & McGee, Charleston, S. C., for respondent.

SIMONS, District Judge.

This is an action for damages arising from a collision on June 3, 1962, between the USS PLOVER MSC[O]33 and the M/V OCEAN QUEEN.

The matter was heard in Charleston, S. C., on December 7, 1964. Prior to the trial, counsel for respondent,[1] with B. Allston Moore, Jr., Esquire, appearing, requested a pretrial conference. Mr. Moore then informed the court that repeated attempts had been made by him to contact respondent since the answer was filed on April 7, 1964. However, despite his efforts, respondent had failed on every occasion to meet with him to assist in the preparation for trial. He further stated that respondent had been informed of the date of trial, but had failed to appear and had not notified counsel of any reason for his failure to so appear. Under these circumstances he requested that his firm be relieved as attorneys of record in the case. The court granted the request.

The matter then proceeded to trial without the appearance of respondent or his counsel.

1. Attorneys of record for respondent were Moore, Mouzon & McGee of Charleston, S.C.

In compliance with Rule 46½ of the Admiralty Rules, 28 U.S.C.A., I find the facts specially and state separately my conclusions of law thereon, in the above suit, as follows:

## FINDINGS OF FACT

■ The USS PLOVER MSC[O]33 is a wooden hulled public vessel of the United States 136 feet in length, 25 feet in beam with a draft of 10 feet.

■ The M/V OCEAN QUEEN, owned and captained by respondent at the time of the collision is a vessel 100 feet in length, 19 feet in beam with a 10 foot draft and is used to carry passengers.

■ At 0830 on June 3, 1962, the M/V OCEAN QUEEN reported on the Coast Guard calling and distress frequency [2182 KCS] that she had seventeen passengers on board and was taking on water rapidly.

■ The PLOVER at sea off the mouth of the Cape Fear River heard the distress signal and after calculating that the OCEAN QUEEN was approximately 35 miles, 220°T from her position reported to the Coast Guard Station at Oak Island that she had a portable pump available.

■ At the request of the Coast Guard, the PLOVER changed course and proceeded at flank speed to render assistance to the OCEAN QUEEN.

■ At 1000 PLOVER made visual contact with the OCEAN QUEEN and when the distance closed to one mile, PLOVER requested the OCEAN QUEEN to slow to a minimum speed needed to maintain steerageway on a course of 190°T. The OCEAN QUEEN complied with the PLOVER's directions.

■ Throughout the maneuvers of the OCEAN QUEEN and PLOVER, seas were slight with a wind of from 5 to 10 knots from 190°T.

■ The PLOVER approached the OCEAN QUEEN and passed her a heaving line in preparation for transferring the portable pump.

■ Respondent threw the heaving line over the side and told the PLOVER that he would come alongside her for the transfer of the pump.

■ The PLOVER pulled ahead of the OCEAN QUEEN and stopped her engines at 1025. The PLOVER remained dead in the water until 1137.

■ The OCEAN QUEEN approached the PLOVER at a 10° angle to the port quarter in a very seamanlike manner.

■ The PLOVER used her port room to transfer a P-250 pump to the OCEAN QUEEN. While hoisting the pump and its accompanying gas tank aboard, the crew members of the OCEAN QUEEN dropped the gas tank over the side.

■ The OCEAN QUEEN maneuvered to retrieve the floating gas tank, and the distance between the two ships opened to about 40 yards, with the OCEAN QUEEN lying almost directly off the port beam of the PLOVER.

■ Without any communication to the PLOVER, the OCEAN QUEEN began a second approach on the PLOVER to pick up section and discharge hoses for the pump.

■ At about 20 yards, respondent backed down and at 20 feet he backed down full but it was too late to stop the OCEAN QUEEN from colliding with the PLOVER at frame #70, number three chock. Time of the collision was 1035.

■ The PLOVER then transferred three men by small boat to the OCEAN QUEEN who operated the pump and stayed on board until the OCEAN QUEEN docked at Southport, North Carolina. The PLOVER escorted the OCEAN QUEEN to Southport.

■ Paid receipts indicated that the cost to survey the damages to the PLOVER was $328.09 and to repair said damages $1,810.00.

## CONCLUSIONS OF LAW

■ This Court has jurisdiction in admiralty of this case as to both parties, and there is no question of venue.

■ ■ I conclude that respondent negligently handled the OCEAN QUEEN, such negligence being the sole and proximate cause of the collision. Liability in a collision case may be based on negligence on the part of the navigator in not exhibiting the proper skill under the existing circumstances. The Lepanto, 21 F. 651, 655 [S.D.N.Y.1884]. Where the circumstances of the case are such to demand unusual care, such care should be used. The Oregon, 158 U.S. 186, 201, 15 S.Ct. 804, 39 L.Ed. 943 [1895]; The Maria Martin, 79 U.S. [12 Wall.] 31, 47, 20 L.Ed. 251 [1871].

■ Certainly where one ship approaches within a few feet of another ship for a transfer of equipment unusual care is needed. When Captain Vereen waved the PLOVER off, he inflicted upon himself the burden of approaching the PLOVER in a seamanlike manner. On the second approach he failed to sustain that burden.

■■ ■ With her engines at stop, the PLOVER was dead in the water immediately preceding and at the time of the collision. When a moored or anchored vessel is hit by a moving vessel, there is a presumption of fault against the moving vessel. Workman v. City of New York, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314 [1899]; The Oregon, 158 U.S. 186, 197, 15 S.Ct. 804, 39 L.Ed. 943 [1895]; The Granite State, 70 U.S. [3 Wall.] 310, 18 L.Ed. 179 [1866]. The PLOVER was not moored or anchored but was dead in the water when struck. The PLOVER had no reason to anticipate any difficulties on the part of the OCEAN QUEEN because respondent had made one seamanlike approach. Once it was obvious that the OCEAN QUEEN was in diffculty, the PLOVER could take no evasive action because her engines were stopped.

■ In summation, I conclude that Samuel Vereen was solely at fault for his inexpert handling of the OCEAN QUEEN. He was negligent in attempting the second approach from an angle almost directly off the port beam of the PLOVER.

In accordance with the foregoing it is ORDERED, that libelant recover of and from respondent, the sum of Two Thousand, One Hundred Thirty-eight and 09/100 ($2,138.09) Dollars, together with the costs of this action.